OPINION OF THE COURT
Ralph Yachnin, J.
This action is brought by plaintiff for a judgment of divorce based upon the abandonment of plaintiff by defendant.
The issues coming on for trial before me between June 26 and July 17, 1986, and the parties having presented their oral *140 and written proofs, the court makes the following findings and conclusions:
JURISDICTION
Pursuant to Domestic Relations Law § 230, the court finds that this action may be maintained on the ground that the parties have resided in this State as husband and wife and either party was a resident thereof when the action was commenced and has been a resident for a continuous period of one year immediately preceding.
FINDINGS
The plaintiff and the defendant were both over the age of 18 years of age and were married in the State of New Jersey on June 9, 1978.
The defendant, without cause or justification and without plaintiff’s consent, on the 1st day of November 1980 abandoned the plaintiff with intent not to return and has been willfully and continuously absent from the home of the parties since that date, a period in excess of one year.
CONCLUSIONS
Upon the foregoing proof, the court awards a judgment of divorce to the plaintiff against the defendant.
MAINTENANCE AND SUPPORT
There are no issue of the marriage and the wife does not seek maintenance.
EQUITABLE DISTRIBUTION OF MARITAL PROPERTY
With respect to marital property of the parties, the court makes distribution thereof pursuant to Domestic Relations Law § 236 (B) (5) as follows:
Although the law is well settled as to the dates to be used in evaluating one spouse’s share of the other spouse’s pension, its orthodox application in the fact situation at bar would work a severe injustice.
The evidence established that the parties were married on June 9, 1978 and separated by the husband’s abandonment of the wife (albeit on good terms) two years and five months later on November 1, 1980. However, the action for divorce was not *141 commenced until September 22, 1984, some three years and 10 months from the date of the breakup. The husband, a police officer, had a pension that ran for 18 years and one month and terminated in January 1986. Consequently, the pension period commenced before the marriage and ended after the commencement of this action.
The only asset subject to equitable distribution is the husband’s pension and the major question before this court is: Shall the computation of the marital portion of the pension which began on June 9, 1978 (the date of the marriage) be adjusted so as to equitably reflect the unfairness in terminating it on September 22, 1984 (the date of the commencement of this action), rather than on November 1, 1980 (the date of the abandonment). Obviously the use of 29 months or 75 months as the numerator of the fraction will constitute a considerable difference in the final amount that the wife will realize as her share of the pension.
Until a few weeks ago, there might have been a diversity of opinion as to whether the rule in Wegman v Wegman (129 Misc 2d 968) would apply to this special situation so as to use the date of separation rather than the date of the commencement of the action, or the rule as laid down in Majauskas v Majauskas (61 NY2d 481), mandating the commencement of the action date. However, when the latest amendment to Domestic Relations Law § 236 was enacted on August 2, 1986, all doubt was removed and the earliest date the court may use is the date of the commencement of the action (see, Domestic Relations Law § 236 [B] [4] [b]).
Equitable distribution means doing justice as equity commands. To do otherwise is to violate the spirit of the law. Accordingly, if the commencement of the action in its orthodox sense is to be the rule in every case without compensating for the extraneous facts, then:
1. It would reward every nonpensioned litigant to delay as much as possible before bringing an action on the grounds that that pension would be "building up equity”.
2. In our age of inflation, salaries keep getting higher and higher and since pensions are almost always based on the highest salary a party earns prior to retirement, delaying the commencement of the action by the nonpensioned party would mean that the pension itself would obviously increase.
3. The purpose of equitable distribution is to allow the parties to keep a share of what they mutually earned during *142 the marriage. There is no doubt that if during the period of time that the parties lived together there was a joining of resources and the sharing of the benefits, then the nonpensioned party should share in the pension for that period. However, during the latter 46 months when the parties were not living together, it is obvious that the wife did nothing to contribute to the appreciation of the pension other than to be married to the defendant in name only.
4. Where a cause of action arises in divorce and the parties act promptly or even within a reasonable amount of time there may be justification to use the commencement of the action date for the measuring of the marital pension period, but not here, where there has been a delay for a period longer than from the time of the marriage to the separation.
The solution to this dilemma can be found in the proper application of section 236 (B) (5) (c): "Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties.” The philosophy of the law is perhaps better set forth in Coffey v Coffey (119 AD2d 620, 622): "At the outset, it is important to note that there is no requirement that the distribution of each item of marital property be on an equal basis (see, Arvantides v Arvantides, 64 NY2d 1033, 1034; Parsons v Parsons, supra; Ackley v Ackley, supra; Rodgers v Rodgers, 98 AD2d 386, 390-391, appeal dismissed 62 NY2d 646). Rather, property acquired during the marriage should be distributed 'in a manner which reflects the individual needs and circumstances of the parties’ (mem of Governor Carey, 1980 McKinney’s Session Laws of NY, at 1863). To this end, courts possess the flexibility required to mold a decree appropriate to a given situation, with fairness being the ultimate goal (see, Rodgers v Rodgers, supra, at p 391).”
As stated heretofore, it would be unfair to allow the wife to reap the benefit of the pension for the entire period from the time of marriage to the date of the service of the summons, but that is the measuring period. Accordingly, the court must abide by it and declare that the percentage used will be 75.5 months as the numerator (the date of the marriage to the date of the service of the summons) and 217.5 months as the denominator (the total time employed and in the pension system) or .3471%.
This percent must then be multiplied by the pension received — but here again a question arises. The husband’s pen *143 sion is as a result of a disability rather than of a straight retirement pension. At the time he received his disability pension he was vested with his regular pension, but obviously not receiving it. Accordingly, the court will use the pension amount that the husband would receive had he retired on a regular pension at the same time that he retired on the disability pension. That would be $10,738.33. (Newell v Newell, 121 Misc 2d 586; West v West, 101 AD2d 834.)
The percentage arrived at heretofore of .3471 must then be multiplied by the pension amount of $10,738.33 and the annual pension amount attributable to the marital period is $3,727.27.
Ordinarily, the next step would be to multiply the aforesaid sum by the percentage which the court finds that the wife contributed to the marriage. At this point equity enters the picture so as to permit the court to "mold a decree which reflects the individual needs and circumstances of the parties”.
The court finds that the wife contributed to 50% of the first 29 months of the marriage but to 0% of the balance of 46.5 months. Therefore, if we multiply the 29 months by 50% and obtain a yield of 1,450 and then multiply 0% by 46.5 and receive an answer of zero and add the two totals together we come out to the grand total of 1,450. When this is divided by the total of the months that the parties were married (75.5), the quotient is .1921%.
The annual amount of the pension that equitably belongs to the wife is that derived by multiplying said percentage of .1921 by the pension amount attributable to the marital period of $3,727.27 or $716.01 per year.
In determining the aforesaid, the court has taken into consideration section 236 (B) (5) (d) (1), (2), (3), (4), (5), (7), (8), (9) and (10) and find that they do not apply. Subdivision (6) does apply but has already been amply covered heretofore.
The court notes at this point that the wife is really faring much better than it appears for two reasons:
1. There has been no deduction of the wife’s portion of the pension taxes which the husband would ordinarily be required to pay. In this case the husband is receiving a disability pension, rather than a regular pension. On that type of pension, taxes are not levied. Should the wife nevertheless be surcharged with a tax deduction? No, for if she were, the *144 husband would then entertain a windfall based upon a nonexistent tax.
2. Because the wife has waited the extra 46 months before instituting this action she is now reaping a percentage of a higher pension base than she would if she had commenced the action in a timely fashion.
Pensions are usually based upon the average salary of the last several years preceding the retirement. In this age of inflation, and the fact that the longer an employee is on the job the higher his salary usually is, it obviously is to the advantage of the nonpensioned party to delay the commencement of the action and thus incur a basis for the pension based upon a salary that increases as time goes by. The question then becomes: Should the court reconcile the base for the pension by using the salary that the husband earned when the marriage was really over rather than the salary at the institution of the action? The answer to this must be, unfortunately, no. To do so would cause the statute to be violated as to when the pension for the marital period would be deemed commenced. While the court cannot effect this change, even in the name of equity, it exhorts the Legislature to delve into this subject so that both the law and equity will be one.
The parties have stipulated to submit affidavits regarding attorneys’ fees rather than having testimony in open court. Accordingly, upon reading and taking into consideration the affidavits of Charles F. Kenny, Esq. in support of the application and Donald H. Darbee, Esq. in opposition thereto, the court awards to Estrin, Sackstein & Kenny, attorneys for plaintiff the sum of $3,000 which shall be inclusive of attorney’s fees and all amounts expended (Ahern v Ahern, 94 AD2d 53; Anderson v Anderson, 115 Misc 2d 294; Birnbaum v Birnbaum, 113 Misc 2d 487).
A copy of the judgment to be entered herein shall be served upon the plan administrator of the defendant’s pension who shall withhold the requisite amounts from the pension and pay it over directly to the plaintiff, in the same intervals that remittances are forwarded to the defendant. The defendant shall also furnish the plan administrator with the correct address of the defendant.